**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CARMELO JOHN GIUFFRE,<br><br>Plaintiff,<br><br>v.<br><br>NORTH AMERICAN SPINE LLC, *et al.*,<br><br>Defendants. | Civil Action No. 16cv1641 (EP) (AME)<br><br>**MEMORANDUM ORDER** |

**PADIN**, **District Judge.**

Plaintiff Carmelo John Giuffre alleges medical malpractice stemming from spinal surgery performed by Defendant Dr. Damon J. Noto, a physiatrist but not a surgeon, at Co-Defendant Hackensack Surgery Center, LLC ("HSC"). HSC previously moved to bar Plaintiff's expert Timothy F. Hawkins, a healthcare safety professional and hospital administration executive, from testifying about whether HSC should have granted Dr. Noto surgical privileges, and for summary judgment dismissing Plaintiff's Complaint. D.E. 173.

Judge Arleo, who was previously assigned to this matter, granted the motion on the record. D.E. 196-2 at 3, *et seq.* ("Tr."); *see also* D.E. 187 (order). Plaintiff now moves: (1) for the Court to reconsider Judge Arleo's decision barring the expert (D.E. 196, "Recon. Mot."); or (2) in the alternative, to certify the denial as a final judgment for an immediate appeal (D.E. 197, "Certif. Mot."). HSC opposes. For the reasons below,[1] the Court will **DENY** both motions.

---

[1] This Court considers the motion without oral argument. Local Civ. R. 78.1(b).

I.  BACKGROUND

Plaintiff, who was 24 years old at the time, had an MRI on January 22, 2014, which revealed disc herniations and bulging, and impingement on nerve roots.  High SUMF ¶ 3.[2]  Defendant North American Spine, a Texas-based marketing company, referred Plaintiff to Dr. Noto for an "AccuraScope," a laser-guided spinal surgical procedure.  PSOMF[3] ¶¶ 3, 17; High SUMF ¶ 1.  On February 20, 2014, Plaintiff visited Dr. Noto, a physiatrist specializing in interventional pain management, for the first time.  PSOMF ¶ 4.  Plaintiff complained of back, neck, and leg pain, having been diagnosed with degenerative disc disease by his treating neurologist in 2010.  High SUMF ¶¶ 1-4; PSOMF ¶ 1.

HSC is a New Jersey-licensed ambulatory care facility containing three operating rooms.  HSC SOMF ¶¶ 10-11, D.E. 173-1.  HSC approved Dr. Noto's privileges to perform Plaintiff's AccuraScope procedure.  PSOMF ¶ 10.  On February 21, 2014, the day after first meeting with Plaintiff, Dr. Noto performed on Plaintiff a surgical discectomy with neural decompression at HSC with intraoperative neuromonitoring ("IONM")[4] and fluoroscopic guidance under general anesthesia.  High SUMF ¶¶ 5-6; PSOMF ¶ 6.  Defendants Dr. High, S&D Surgical, Mr. Holt, and Mr. Martin (collectively the "IONM Defendants") were involved with the IONM used in the procedure.  S&D SUMF ¶¶ 3, D.E. 172-3.

Plaintiff's claims specifically concern the "AccuraScope" discectomy procedure.  HSC SOMF ¶¶ 3-4.  Following the procedure, Plaintiff continued to complain of moderate to severe pain and weakness in his right foot.  By April 10, 2014, he was experiencing foot drop and on

---

[2] Defendant William L. High, MD's Statement of Undisputed Material Facts.  D.E. 171-1.
[3] Plaintiff's Counterstatement of Material Facts.  D.E. 175.
[4] IONM is the use of physiological monitoring techniques to assess neural integrity and/or to map or neuro-navigate within at-risk neural structures during various surgical procedures."  D.E. 171-3.

August 11, 2014, he was diagnosed with complex regional pain syndrome type 1 of the lower limb. High SUMF ¶ 14.  Plaintiff became habituated to high-dose narcotic analgesics.  *See* Expert Report of Dr. Saran Rosner, D.E. 176, Ex. H; Expert Report of Dr. Gerard Malanga, D.E. 176, Ex. I.

After Plaintiff's surgery, Dr. High learned that Dr. Noto was a physiatrist, not a surgeon. *See* High Deposition Transcript ("High Tr.") 38:16-18, D.E. 176, Ex. D.  The thrust of Plaintiff's claim against HSC is that HSC breached its duty of care by failing to properly vet Dr. Noto, and that HSC's breach resulted in Plaintiff's permanent injuries.

On June 15, 2022, Judge Arleo held oral argument on numerous motions including, as relevant here, HSC's motion for summary judgment and to exclude the report of Timothy Hawkins, a board-certified healthcare safety professional and hospital administrator.  *See generally* Tr.  Judge Arleo granted HSC's motion, holding that Hawkins' testimony suffered from the same flaws as Plaintiff's other expert, board-certified neurologist Dr. Lechtenberg: a failure to explain how HSC deviated from general, or its own, standards of care by permitting Dr. Noto to operate on Plaintiff.  *Id.*  Judge Arleo also granted the summary judgment motions of Co-Defendants S&D Surgical Systems, John Holt, Adam Martins, and Dr. High, leaving Dr. Noto as the last Defendant.[5] D.E.s 187, 188.

Plaintiff now moves to reconsider the portion of Judge Arleo's order excluding Hawkins or, in the alternative, to certify Judge Arleo's order as final and/or permit immediate appeal.  D.E.s 196, 197.  HSC opposes.  D.E.s 201, 2022.  Plaintiff has not replied.

---

[5] On May 24, 2017, the matter was stayed against Athas Healthcare, LLC, d/b/a North American Spine, pending resolution of an action to compel arbitration of Plaintiff's claims in the Northern District of Texas.  D.E. 100.  It appears that on February 23, 2018, Judge Lindsay of the Northern District of Texas denied Plaintiff's motion to dismiss, granted Athas/North American Spine's request to compel arbitration, and dismissed the matter with prejudice.  *See* N.D.T.X. Index No. 17cv300-L at D.E. 26.

## II. LEGAL STANDARD

Local Civil Rule 7.1(i) permits a party to seek reconsideration of matters which the party "believes the Judge or Magistrate Judge has overlooked" when it ruled on the motion. "The word 'overlooked' is the operative term in the Rule." *Bowers v. NCAA*, 130 F. Supp. 2d 610, 612 (D.N.J. 2001) (citation omitted); *Compaction Sys. Corp.*, 88 F. Supp. 2d at 345. "The standard for [reconsideration] is high, and reconsideration is to be granted only sparingly." *United States v. Jones*, 158 F.R.D. 309, 314 (D.N.J. 1994).

The movant has the burden of demonstrating either: "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court [issued its order]; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Max's Seafood Cafe v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999) (citing *N. River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995)). Plaintiffs' reconsideration motion focuses on the last option.

## III. ANALYSIS

### A. Judge Arleo properly considered both the report and the deposition testimony under the *Daubert* standard

Plaintiff first argues that "the Court erred in confining its review of Hawkins' opinions to his pretrial report alone and in disregarding his deposition testimony." Recon. Mot. 3. Plaintiff argues that Judge Arleo did not consider Hawkins' deposition testimony, that Hawkins' opinions satisfy the *Daubert* standard, and Judge Arleo erred by not holding a *Daubert* hearing. Mot. 3, 5, 13. The Court disagrees.

Plaintiff is correct that there is no bright line rule "that every opinion by an expert must be preliminarily stated in the report, or forever be precluded." *Hill v. Reederei F. Laeisz G.M.B.H.*, 435 F.3d 404, 423 (3d Cir. 2006). But Judge Arleo's decision excluding Hawkins was not, as

4

Plaintiff argues, limited to the report itself. Judge Arleo agreed that Plaintiff could plausibly assert a theory holding that HSC violated an independent duty to Plaintiff by failing to properly follow HSC's own credentialing and vetting. Tr. 38:15-22. But the problem was not the theory; it was Hawkins' proposed application, *i.e.* the report's reliability and fit.

The Third Circuit has described Federal Rule of Evidence 702 as embodying a "trilogy of restrictions on expert testimony: [1] qualification, [2] reliability, and [3] fit." *Calhoun v. Yamaha Motor Corp., U.S.A.*, 350 F.3d 316, 321 (3d Cir. 2003). Under *Daubert*, reliability compels "the expert's opinion . . . [to] be based on the 'methods and procedures of science' rather than on 'subjective belief or unsupported speculation'; [sic] the expert must have 'good grounds' for his or her belief." *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 742 (3d Cir. 1994) (quoting *Daubert*, 509 U.S. at 590). Reliability also ensures that there is a sufficient connection between "'conclusions and methodology.'" *Oddi v. Ford Motor Co.*, 234 F.3d 136, 146 (3d Cir. 2000)). (quoting *GE v. Joiner*, 522 U.S. 136, 146 (1997)). To that end, the standard prohibits "'too great a gap between the data and the opinion proffered.'" *Id.* (quoting *Joiner*, 522 U.S. at 146).

And when determining an expert report's fit, that is, whether the expert's opinions would "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a); *see also Karlo v. Pittsburgh Glass Works, LLC*, 849 F.3d 61, 81 (3d Cir. 2017). This requirement "goes primarily to relevance." *Daubert*, 509 U.S. at 591.

Judge Arleo discussed extensively her concerns regarding the reliability and fit of both Dr. Lechtenberg and Hawkins' reports, which refutes Plaintiffs' argument that Judge Arleo limited her consideration to the reports. To the contrary, Judge Arleo considered the depositions of Dr. Lechtenberg and Hawkins precisely *because* the reports lacked the necessary information. *See* Tr 27:12-14. For example, referring to Dr. Lechtenberg, Judge Arleo opined:

5

- "We know that the four corners of the report are where we should be looking for the expert opinion, and that will be the governing body, but I've also considered, I've looked at some of his explanations in his deposition transcript to the extent that they are relevant."  Tr 7:13-18 (referring to Dr. Lechtenberg's report).

- "And none of this is in the report, by the way, or in the deposition transcript, by the way."  Tr 15:12-13 (referring to Dr. Lechtenberg).

Indeed, at one point, Judge Arleo explicitly asked Plaintiff's counsel to identify the portion of Dr. Lechtenberg's deposition relevant to the report's conclusions:

| | |
|---|---|
| Court: | Where in this report does Dr. Lechtenberg offer the opinion that a technician in the operating room had the legal responsibility and it's a deviation from accepted standards of care for a technician to vet the surgeon?  Is that anywhere in this report? |
| Pl. Counsel: | Your Honor, it is not in the report.  It is in his deposition testimony. |
| Court: | Would you read that testimony to me? |
| Pl. Counsel: | I cannot cite to the specific provision at the moment, Your Honor. |
| Court: | Because I didn't see it there. |

Tr 9:19-20-10:3.

Judge Arleo then noted that Hawkins' report "suffered from the 'same problem'" as Dr. Lechtenberg's: important facts in the case "are not even in the expert report," requiring Judge Arleo "to delve through some old deposition transcripts to try to figure out what happened here."  Tr 27:6-8, 27:12-14.  Judge Arleo ultimately—and correctly—found that Hawkins' report did not "talk in any way, shape, or form about what happened at Hackensack."  Tr. 27:10-11.

To the extent that the deposition did appear to reference documents signed by a medical director, Judge Arleo found that "one oblique reference" absent from Hawkins' report and devoid of analysis of any credentialing process.  Tr. 37:13-38:10.  There was no evaluation that would "assist[] the trier of fact to decide whether, independent of Dr. Noto, whether [HSC] violated an

6

intendent duty to this Plaintiff by failing to properly follow its own procedures in credentialing and vetting[.]" Tr. 38:5-20. Hawkins' testimony, in other words, was "the kind of net opinion that *Daubert* is supposed to prevent." Tr. 38:10-11. Thus, applying *Daubert*'s standard, Judge Arleo appropriately found that Hawkins' report lacked reliability and fit.

And finally, to the extent that Plaintiff argues that Judge Arleo erred by failing to hold a *Daubert* hearing, this Court agrees that no hearing was required. "Whether to hold an *in limine* hearing upon a *Daubert* objection is an issue that 'rests in the sound discretion of the district court.'" *Furlan v. Schindler Elevator Corp.*, 516 F. App'x 201, 205 (3d Cir. 2013) (citing *Padillas v. Stork-Gamco, Inc.*, 186 F.3d 412, 418 (3d Cir. 1999)); *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999) ("The trial court must have the same kind of latitude in deciding *how* to test an expert's reliability, and to decide whether or when special briefing or other proceedings are needed to investigate reliability, as it enjoys when it decides *whether or not* that expert's relevant testimony is reliable."). "A hearing may not be required in all circumstances, particularly where the depositions, affidavits, or briefing before the court are sufficient to perform a proper analysis." *Furlan*, 516 F. App'x at 205 (citing *Oddi*, 234 F.3d at 154).

Here, Judge Arleo closely examined a complete record, including Hawkins' deposition. And Plaintiff could not, at oral argument, address Judge Arleo's concerns regarding reliability and fit. Even now, Plaintiff has not indicated what information a *Daubert* hearing might elicit that would address those concerns. Accordingly, Judge Arleo did not err in failing to hold a *Daubert* hearing. *See Furlan*, 516 F. App'x at 205-06 (3d Cir. 2013) (district court did not err in failing to hold *in limine* hearing where party whose expert was excluded did not demonstrate what information could have been disclosed or how it would have advanced that party's position); *Leese v. Lockheed Martin Corp.*, 6 F. Supp. 3d 546, 552 n.5 (D.N.J. 2014) (holding that hearing was

unnecessary where deposition regarding expert's "methodologies, his assumptions, and how he arrived at his opinions" was sufficient to perform a proper *Daubert* analysis). Accordingly, the Court will adhere to Judge Arleo's determination.

**B. There is no basis to certify the judgment as final or permit an immediate appeal**

Generally, an order which terminates fewer than all claims pending in an action or claims against fewer than all the parties to an action does not constitute a "final" order for purposes of 28 U.S.C. § 1291. *Elliott v. Archdiocese of N.Y.*, 682 F.3d 213, 219 (3d Cir. 2012). However, Civil Rule 54(b) permits a district court to convert such an order to a "final" decision over which a court of appeals may exercise jurisdiction under 28 U.S.C. § 1291. *Id.* But that "is the exception, not the rule, to the usual course of" district court proceedings. *Id.* at 220. And it should be "used only in the infrequent harsh case as an instrument for the improved administration of justice and the more satisfactory disposition of litigation in the light of the public policy indicated by statute 28 U.S.C. § 1291 and rule." *Id.* (quoting *Panichella v. Pa. R.R. Co.*, 252 F.2d 452, 455 (3d Cir. 1958)). "The burden is on the party seeking final certification to convince the district court that the case is the 'infrequent harsh case' meriting a favorable exercise of discretion." *Anthuis v. Colt Indus. Operating Corp.*, 971 F.2d 999, 1003 (3d Cir. 1992).

To employ its discretion, "a district court must first determine whether there has been an ultimate disposition on a cognizable claim for relief as to a claim or party such that there is a 'final judgment.'" *Elliott,* 682 F.3d at 220. If so, "the district court must go on to determine whether there is any just reason for delay, taking into account judicial administrative interests as well as the equities involved." *Id.* (quoting *Curtiss-Wright Corp. v. Gen. Elec. Co.*, 100 S.Ct. 1460, 1464-65 (1980)). If directing final judgment permitting appeal, the court must "clearly articulate the

8

reasons and factors underlying its decision to grant 54(b) certification." *Id.* at 220-21. Factors for consideration include:

> (1) the relationship between the adjudicated and unadjudicated claims;
> (2) the possibility that the need for review might or might not be mooted by future developments in the district court;
> (3) the possibility that the reviewing court might be obliged to consider the same issue a second time;
> (4) the presence or absence of a claim or counterclaim which could result in set-off against the judgment sought to be made final;
> (5) miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense, and the like.

*Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 203 (3d Cir. 2006).

Here, Plaintiff argues that the Court should grant certification because only Dr. Noto remains, and therefore would assert an empty chair defense, *i.e.*, that HSC bears at least some responsibility for Plaintiff's injuries. Certif. Mot. 4. Plaintiff also argues that an appeal after trial, and reversal of Judge Arleo's summary judgment decisions, would necessitate a re-trial. But Plaintiff does not provide any support for either argument, which is enough on its own to conclude that Plaintiff has not met his burden.

Moreover, as HSC argues in opposition, the opposite scenario is equally likely. That is, because liability arguments against Dr. Noto and HSC are related, a jury finding for Dr. Noto could moot any liability claim against HSC. *See also Gerardi v. Pelullo*, 16 F.3d 1363, 1370-1371 (3d Cir. 1994) (district court abused discretion in entering judgment under Rule 54(b) on unjust enrichment claims, because pending claims were closely related to those adjudicated); *Hogan v. Consolidated Rail Corp.*, 961 F.2d 1021, 1025-1026 (2d Cir. 1992) (court abused its discretion in ordering judgment because certified claims were too closely related to unadjudicated claims remaining in district court).

9

Likewise, there is no basis to certify an immediate interlocutory appeal. The statute governing interlocutory appeals, 28 U.S.C. § 1292(b), imposes three criteria for the district court's exercise of discretion to grant a § 1292(b) certificate. The order must (1) involve a "controlling question of law," (2) offer "substantial ground for a difference of opinion" as to its correctness, and (3) if appealed immediately "materially advance the ultimate termination of the litigation." *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 754 (3d Cir. 1974). There is a strong policy against piecemeal appeals; thus, "certification of an interlocutory appeal is granted sparingly and only in exceptional circumstances." *Kaiser Grp. Int'l, Inc. v. Ostrava (In re Kaiser Grp. Int'l, Inc.)*, 400 B.R. 140, 145 (D. Del. 2009).

Plaintiff makes three arguments. First, Plaintiff argues that Judge Arleo's decision, if reversed on appeal, is a controlling question of law because all claims against HSC were dismissed. And second, Plaintiff argues that his negligence claim against HSC for certifying Dr. Noto to perform Plaintiff's surgery presents a novel, complex issue. But both arguments suffer from the same flaw: as HSC argues in opposition, the issue here is the *Daubert* standard, which is well-settled. Judge Arleo recognized the plausibility of Plaintiff's negligence claim against HSC, but the issue (and the subject of Plaintiff's motions here) was Hawkins' satisfaction of the *Daubert* standard, not the substance of the underlying claim.

Plaintiff's third and final argument is that an immediate appeal would advance this matter's ultimate termination because a reversal would necessitate a re-trial and unnecessarily prolong the litigation. For the reasons above, however, the reverse may be true: a trial is just as likely to eliminate the need for an appeal. Accordingly, the Court will deny Plaintiff's motion to certify and/or permit an immediate appeal.

## IV. CONCLUSION

For the reasons above, it is

**ORDERED** that Plaintiff's motion for reconsideration (D.E. 196) and motion to certify the Court's June 15, 2022 order as final (D.E. 197) are **DENIED**.

Dated: February 7, 2023

_____
Evelyn Padin, U.S.D.J.